May it please the court, my name is Randy Rumpf. I represent Shenetta Toney, the plaintiff appellant. As you know the fact she was a campus supervisor at Bear Creek High School on April 24th of 2014 when there was a melee after school had ended in the school parking lot. Some people had come on the property and started multiple fights. She was injured in trying to stop those fights. The Stockton police were called and after the fights were stopped she witnessed what she believed was abuse. In her testimony she said she saw the police officer take a 90-pound African-American student's head three times to the concrete creating blood coming out of her head. Shockingly, that was shocking to her, so she said this is police brutality to anyone who was present. Take out your Shortly thereafter left the scene. Shortly after that the principal, defendant Atterbury, wrote a reprimand of my client and included in that reprimand was that speech which we claim is protected by the first amendment. There was a list, wasn't there? There was a list, yes, and that's in the executive record. Let me go back for a minute and ask you, her job title was a campus security supervisor. Yes. What does that mean? Well, basically her duties were patrolling the campus, monitoring and maintaining order, security, assuring student compliance with schools and regulations. That's at EOR 18 and 19. But my position is, you know, we have a Garcetti issue, of course, but even before you get there, we have a judicial estoppel issue, because the defendants took the position at my client's arbitration that this was not part of her job duties to do this. This was inappropriate. Well, I understand that, but they were saying she was violating her job duties, not that this was outside in some fashion, I thought. Well, a violation of her job function would be outside the scope of her duties. If she was, if it was appropriate for her to say, take out your phones, this is police abuse, take out your phones and videotape this, then they should have applauded that and said she's doing her job very well. Instead, in both the reprimand by Atterbury and the recommendation, termination recommendation by Young, they said that was inappropriate. Can I just make a gentle suggestion? Let's put aside the judicial estoppel argument. Okay. Because you have limited time. Maybe if you have time at the end, you can come back to that. But assume that we're not going to be persuaded on that. Okay. Then you've got the Garcetti issue, which is now altered. My argument, I will admit, has been altered by the Kennedy decision, which I just read this weekend, so I apologize. I would have filed that subsequently. But the Kennedy versus Bremen School has now kind of jumped back into the Johnson versus Poway School. But let me address that. First of all, in Kennedy, you have a coach who's nearly on the 50-hour line. He admitted that was part of his job function. He says, I have to teach these kids how to be good sports, and doing this is teaching them how to be good sports. We don't have that admission here. Secondarily, the opinion in Kennedy adopts the event language from Johnson. It says, if you're at a school event, now, the word event, speech at a school event, is pursuant to your job functions. The event was a football game. The word event certainly has implicit in it control by the school district. The school district controlled the football field in Kennedy. And that was clear, and they said that in their opinion. They said, people in the public couldn't go onto the field, even the satanic worshipers wanted to go on the field, and they were prevented from doing it. The coach got to do it because he was a coach. Anyone in the public could see police abuse and say, hey, this is abuse. Take out your phones and record this. So there's a difference there in Kennedy. Third, the issue of control here. The school district in Kennedy controlled the football field, but once the police come on to your school and they start arresting students, the school district has lost control. That's not a school event. That's a police event. So once the police come on the campus at Bear Creek High School and they say, they take this student, whose initials are E.T., and they brutalize her, the school has lost control over that student. You cannot interfere. My client was actually charged with lynching, which is interfering with a police officer. So once the school has lost control, my client now has stepped outside her job, and she has become a citizen discussing a police event. Let's assume that she wasn't acting in accordance with her duties. That's why she was terminated. Yes. And the letter reprimands says you tried to physically take a student away from other campus security personnel who were performing their duties in restraining the student who had pushed a teacher. And then you continued, when the police came, you continued to be argumentative and hostile. And then you tried to pull the student away. So all of this is based on her not acting in accordance with her job duties. Well ---- I don't see how you make that into a First Amendment retaliation claim. First of all, we are — what is our burden here? The Supreme Court says our burden is to show it's a motivating or substantial factor. How do you define motivating factor? It can be one of multiple factors. It doesn't have to be the sole factor. So their own paperwork shows that her speech was one of several factors. Secondarily, Justice Schroeder, we showed in our summary judgment opposition, and it's in the EOR, that those other items were just pretext. She did not try to grab a student from Officer, Campus Supervisor Sofaro. We got the student's declaration to say, I didn't do that. That's untrue. We got Mr. Sofaro to say, she didn't cause a problem. We had Mr. Teller-Pelly to say, it lasted for five seconds. She said, give her to me. We said, we're taking her to the police. She said, okay, and backed away. So that was pretext. That's our — our position is that is pretext to — to the actual First Amendment violation here. The same thing with the allegation that she took Desjardins Easter from — from a police officer. We got Ms. Easter to say, no, that didn't happen. We got Mr. Teller-Pelly to say that didn't happen. My client said it didn't happen. Officer Sofaro says it didn't happen. Supervisor Sofaro said it didn't happen. They relied solely on some hearsay testimony from a police officer that just flat-out wasn't true. And our position is that's pretext. Are you challenging — now, are you talking about the — the proceeding before the Board of Education? No. No. But they — we know that from their written statements and what they said before the board that she did these things that just weren't true. And we have trial lawyers now, not a — not a union representative that had substantial experience. And during our discovery, we showed that's just not true. That's pretext. And that's what we said in our summary judgment opposition. Those other items, trying to take a student from a campus supervisor's hands, trying to take a student from an officer's hands, that's just false. And if it's false, Justice Schroeder, isn't that pretext? That's what we maintain. The other statement that Ms. Basinger had to calm her down, we proved that that was false. So you have four items that you cited, Justice Schroeder, and of — of those four, three of them we proved were false. That left the speech. So our position is those other items were just pretext to cover for their — for their violation of our First Amendment rights. Well, the finding of the board was that your behavior significantly escalated a precarious situation, endangered the well-being of district students and staff. One of your primary duties is to maintain order and secure safety of security. So your actions were in complete derogation of that duty. And that would appear to be indicative of why she was terminated. Justice Schroeder, that was at her arbitration proceeding. Yeah. And the Supreme Court in McDonald said arbitration proceedings that do not have collateral estoppel effect. So that has no effect here. We get to go where we have real lawyers, not a union representative representing my client. My client had a union representative at that hearing. That representative really did not do a good job. If you look at the transcript, he failed to even ask Dejane Easter, did my client try to take you from a police officer's hand? But once my client is represented by trial lawyers with over 40 years of experience, we proved those were false. So that's why I think the Supreme Court in McDonald said this has no collateral estoppel effect, a res judicata effect, an arbitration decision, because you're not really represented by lawyers. You don't have discovery. I think you're right about that. Yeah. Go ahead. But just coming back to whether your client was speaking in the capacity of a private citizen versus a public official, I guess I just I have a hard time accepting your argument because she was on duty, right, in uniform. Yes. On campus and in the context of actually exercising the very duty she was employed by the school district to perform, right, which is namely to to assist the officers in trying to gain control of the situation. Right. Not when they're brutalizing students, Your Honor. Well, well, well, I, I would be 100 percent behind you if this had been some off campus incident on a Saturday that she had witnessed and she had said what she had said. That's that is speaking in your capacity as a private citizen. If I might answer your let's let's take this example. Let's say the student is driving in her car outside the parking lot onto the street and is now off property. The police stop her, pull her out of the car and pull a Rodney King and beat the tar out of it. And my client says, look to anyone who's present, that's police brutality. Take out your phones and videotape that. Would that be part of her job duties? The student is now outside the control or outside the control of the school. Yeah. Maybe not. But that's not that's not what happened here. But there's no difference because the police had control. Hang on. Hang on. Okay. Just I mean, I'm sure I just want you to try to help me because I'm not with you at this point and I would need some help to get there. You might be right that even a short distance off campus, let's say, especially after school was over, 5 o'clock, 6 o'clock, and she said what she said, that might be one thing. But we're during the school day, during the period in which she's employed to help maintain order on the campus. She's in uniform on duty in the middle of trying to assist the police officers. Right. I gather that your position is not that in that capacity she could say whatever she wanted and she would be deemed to to speak in the capacity of a private citizen. Right. If she had urged the crowd to basically rise up and turn on the police and the crowd had, in fact, done that, I assume you would say maybe the school district could punish her for that, right, because she would be speaking in the capacity of as a public school officer. That's not protected under the First Amendment because it's not a matter of public concern. You're causing a riot and that wouldn't be protected. No, I'm okay. Fine. I'm not talking about something that rises to that level where it's totally unprotected. But I'm just saying you — Well, if I might respond by one word. One word answers your question, and that's control. That's what I'm trying to tell you. If the student's on the street, they're outside of the control of the school, right? If the student — the student in question that the speech related to was outside the control of the school at the time this was happening, she was in control of the police officer. The police officers had her arrested. They were banging her head on the ground. Okay. But we're focused on your client. It's the capacity in which your client is speaking. It has nothing to do with whose control the kid was in. But she's — she's under — she's representative of the school district, right? That's where she works. That's the problem. So if she — if she's commenting on a police event, not a school event, not a football game, not prayer on the 50-yard line, this is a police event that just happens to be occurring on the school where the school has zero control over the students — over the student that's in custody, that is. The police — that — that student is in custody of the police officer, and the school has no control over that student. Otherwise, you're going to get in trouble for lynching if you try to take actions to — to do control, which happened here. Okay. Let me go back a minute, because I still don't quite understand. I'm not suggesting that it's race judicata as to what happened in the hearing. What I am suggesting is that the reasons given by the school board for what action it took, which is a list of things, one of which refers to something that she said. I'm just — what do we do with that and with the fact that there was a hearing? Do we just ignore it all and say, no, we now are going to — we're now going to have a trial as to what happened on that, and then extrapolate to what their motive might have been? It's just — Is that — is that what — That's exactly what happens in every employment case I handle, almost — almost exactly. I have to show that the reasons given by the employer were pretext. And so I put evidence on that says this is wrong, this is pretextual. So the reasons given that you cited, we — we put in our summary judgment opposition. Those are pretext. The only thing that was true that they cited was the fact she engaged in protective speech. But it wasn't part of her job function because she was addressing an event that was controlled by the police. And I would like to reserve the rest of the time. Yes. Okay. We'll give you some time in rebuttal. Let's hear from counsel for the defendants. Thank you. May it please the Court. I'm Mark Davis. I'm counsel for the defendants, Mr. Atterbury. Excuse me, Mr. Young and also the appellees. Basically, I think the case involves an issue of if a employee voluntarily engages in conduct, not speech, but conduct, that the employer believes is inappropriate and warrants termination, can the employer make that recommendation? And can the employer terminate that person, even if the employee says, while I was not engaged in inappropriate conduct, I made comments that I claim are protective. And I think the case law is clear that the action taken by these defendants was appropriate. Well, what is the closest case to this? I think, actually, if you look at all the cases cited by the district court, the Johnson case, Pickering case, the Ng case, when you analyze situations like this, and I think there's an acknowledgement those are still good law, that you look at the conduct involved, you look at the speech, and under that standard, the action taken was appropriate. But I think what's happened here is kind of a hijacking. No, but what I'm asking, you're saying the Johnson case did involve speech. Yes. And it was in the classroom. And you're drawing a distinction between speech and conduct, and I'm just wondering what case, if we have some case that makes that distinction. Well, hopefully, there's no dispute that if there is an inappropriate conduct, and you do something completely inconsistent with what you're expected to do, that the employer has discretion to take action. If you want to look at the immunities, Government Code 820.2, you have discretion. 821.6, you have the ability to do what's necessary in connection with an investigative matter, and you have an immunity. And we haven't, if I'll get time, get the qualified immunity that I think is applicable. But I think what happened here is you have, and it should be noted, that what these two people did wasn't to actually terminate this person. I understand the argument that they got the ball rolling. But what Mr. Atterbury did was when he was confronted with a complaint about what this person had done, and the complaint came from many people, employees and police officers. This was a massive melee. Multiple cars came from Lodi Police Department. Multiple cars came from Stockton Police Department. This was a pretty big deal at a high school. So it was a very big deal. He gets complaints from police officers, and in fact, as is acknowledged, the plaintiff's conduct was such that the police officers not only criticized the plaintiff, they arrested her. Those charges were dropped, but that's what they thought of her conduct. All Mr. Atterbury did was look into this and write a letter of reprimand saying, I'm going to pass this on to the district office. And I think if we're getting into qualified immunity, how could that possibly be violating a well-established constitutional right? The next level up is the other defendant, Neil Young, who did work in the district office. He did a very detailed investigation. And before I move on from Mr. Atterbury, and I think the courts noted this, this wasn't a situation where he took action because somebody made a comment. If the letter of reprimand or the recommendation of the termination was based on the fact that you made a comment, that's why we took this action, there might be a case. But the action that Mr. Atterbury took was one, the plaintiff had tried to interfere with a fellow campus supervisor taking away a student. Then she did the same thing trying to take away a student from a police officer. That's actually a criminal violation. He does make acknowledgment about her comment. But what's important here, if we want to turn this into, instead of an issue about conduct, what they're allowed to discipline her for. I think everybody agrees with that. And try and hijack that and turn it over into a First Amendment issue. The First Amendment protects content of speech. Well, I take it if she had called a press conference there, or if there were reporters and she had gone over to the reporters and told them to report that this was police brutality, I assume you would say that's an exercise of a First Amendment right? That's a totally different time, manner, and place. So I think it would be considered different. Well, it would be the same place. She just goes over, there are reporters who show up in the scene. She says, here, look at this. Look what's happening here. I took that to mean that the reporters aren't in the middle of the melee. She's perhaps off to a side, talking to the reporters, as opposed to being in the heart of it here. For example, let's say the content of the speech is, look what's happening. This is f'd up. This is bullshit. This is, and I apologize, but it's all through the record. This is police brutality. Take out your cell phones and record this. Mr. Atterbury and Mr. Young both put in their declarations that one, their decision had nothing to do with that comment. It was based on this other laundry list of conduct. It had nothing to do with the speech. But they both said, had she come in the next day and said, I think this was ridiculous. This was police brutality. This shouldn't happen. She's entitled to that opinion. They both said nothing would have happened. Conversely, if the argument is this is always protected, what if every day she went into the classroom and repeated these words? Went to every classroom in the high school. You know, in my opinion, police brutality is bad. It's f'd up. It's BS. If anybody ever sees it, it should be, you take out your video, your cameras and video it. The teacher in the classroom would say, you know, you're a campus supervisor. You're disrupting activity here. And she would say, I've got a First Amendment right to say it. That's why I think the time and the manner and the place of what you say these, when you say these comments is appropriate. It's content that's protected, not, you have to look at the time, manner, and place. But in the record that we have, since the court agreed with you that it was not protected, we don't have any findings concerning what happened and the melee and whether the reasons were pretext or nonpretext. So what are we to do, even if we agree with you? Because it seems to me we don't have decisions from the court below about exactly the status of what was going on. Well, it was briefed by both sides. And I think the attachments to the briefs set forth Mr. Atterbury's investigation and why he took the action he did. Mr. Young's very detailed investigation and why he took the action he did. And again, he didn't fire her. Neither person fired her. Mr. Young just made a recommendation that she be terminated. It went to a next level up, Mr. McKilligan, assistant superintendent. She had a scala hearing. The decision was affirmed. Then it goes to the next level. So the evidence we have is that this went through multiple levels with everybody agreeing that there was sufficient evidence to take the action they took. And, Your Honor, I just want to clarify one thing. There's been references to the hearing before the Board. It actually was, I think, the fourth level was the Office of Administrative Hearings. So what happened was Mr. Atterbury's concerned about all the complaints he gets. He writes a letter of reprimand. He's the school principal. It then goes to Mr. Young at the district office. He does a detailed investigation. He recommends termination. Those are the only two defendants. It then goes to another level, level three, a scala hearing that she's entitled to with Mr. McKilligan, assistant superintendent. He listens to her story. He looks at the video. Whatever video she says that presents or helps her case, it doesn't, in his opinion. He affirms the decision to recommend termination. She's then allowed to go to the next level. It's the Office of Administrative Hearings, a neutral third-party arbitrator who hears two days of testimony. And that's the one, I think it's in the EOR, page 236, where he talks about her conducts directly contrary to her duties and obligations. And in conclusion, he makes various findings. This is a third-party independent arbitrator. One, that she acted incompetently. Two, there was an inexcusable neglect of duty. Three, insubordinate. Four, a willful or knowing violation of the district rules. Five, inexcusable, discourteous, offensive, abusive conduct. That isn't why the district court ruled the way that it did, is it? Well, actually, they ruled on the point two of the Pickering test. Right. And never got to the rest. Pardon? Exactly. He never got to the rest of it, which is what you're talking about. Correct. But I just wanted to clarify, the school board was actually level five. The plaintiff was represented by a union rep, participated at level four, the Office of Administrative Hearings. The OAH confirmed the district's decision. And then it went to level five, the school board. It's my understanding the plaintiff didn't contest that at all, the school board. And the school board adopted the decision to terminate. The court did not go past step two in the Pickering test. But all the evidence before the court, if I can just review what those other tests are, I think the court could have decided this way. And this court could also have affirmed the decision based on all the other elements that were briefed that showed the plaintiff can't prove a case. Why don't you want to defend the decision below on the ground that the district court relied on? I think it was a correct decision. But I think there was four or five other reasons the court could have used to reach the decision it reached. Maybe I have misunderstood the tenor of your argument so far, but I haven't heard you say anything to support what the district court. You've wanted to talk about other things, and that's why I think you're getting the questions that you have from my colleagues. Oh, I think the district court's decision was correct. It focused on this not being a private statement, but a statement from a public employee. And some of the comments from the court, I think, have picked up on that. She's on duty. She's on campus. She's in uniform. She has her radio. She is instructing students what to do. I think it was a bit of a red herring argument to say, oh, her comment couldn't have been directed toward students. It was directed toward the person that she couldn't even control because that person was under police custody. Now, obviously, that comment was not directed to that person. That person was being handcuffed and was in no position to take out a cell phone and start videoing. So the comment, this is BS, take out your cell phones and start videoing, was not directed toward that student. It was directed toward all the other students, obviously. So for all those reasons, she is working and speaking while on the job. The issue is when Mr. Atterbury and Mr. Young are asked, boy, to say something's BS or effed up or take out your cell phones and start videoing, is that part of your job? They said, well, it's not part of the job description, no. But it's not part of your job description to get injured on the job. But if you are, it is part of your job. And you get workers' compensation. And, if I can point out, she was injured at this time and she presented a workers' compensation claim. She knew she was acting on behalf of her employer throughout this time. And she presented a claim and received benefits for that. So I think it's inconsistent to say she's not working on behalf of the district and her activity is not in connection with district activities as she's making these comments. So the district court, to address that second point of pickering that was the basis of the court's decision, pointed out just what this court's noted and I noted. She was patrolling. She responds to a melee. She's instructing students. And, as I added, she had a workers' comp claim arising from this exact situation. If I can point out one other thing. There was an argument that shouldn't apply because she doesn't have the trust and authority of teachers. I don't know if I need to spend any time on that. But I think trying to limit the Johnson case and all those other cases that I think support our position to teachers is faulty logic. The logic essentially is Johnson applied to a teacher. This person, the plaintiff, is not a teacher. Therefore, Johnson shouldn't apply. I think that's faulty logic. The trust — Well, what the district court said was because plaintiff spoke as a public employee during the incident, her speech during the incident is not protected under the First Amendment. And so you would agree with that? Yes. Yes. When she's making that comment, how is it going to be perceived by the student? This is the campus supervisor. That person does have authority. That person can take you back into class if you're out of class or bring you back into campus if you're off campus. Can take you to the office where discipline can happen. You can't just blow off the campus supervisor. That person has authority. So they are speaking with authority in an official capacity when they're yelling out instructions to students that are under her control. And on the trust issue, hopefully all employees have trust. There was an argument about only teachers pass on knowledge and wisdom. I can tell you for this district and all the other districts I represent, they expect all the employees to pass on knowledge and wisdom, whether it's coaches, administrators, counselors, campus supervisors. So the cases that involve teachers should not be limited to just teachers and should be applicable here. I think the district court's decision was correct. If I can just touch briefly, I almost wish it had gone on. I totally agree with the decision on Pickering No. 2, the second element. But if you look at the other elements, the plaintiff cannot show. Did the district decide? Oh, the district didn't decide that other factors would have warranted summary judgment. I'm sorry. Was it a substantial factor in the decision, her speech? No. Look at the declarations that were submitted. Did the state have an adequate justification to treat her differently from the public? Yes. She's the district's employee who's bound by certain rules. And last, would the district have taken similar action even without the speech? Yes. That's in Mr. Atterbury's declaration, Mr. Young's declaration. And it should be noted this Office of Administrative Hearing didn't even involve the first speech issue, and yet they still confirmed the decision. So clearly this is a decision that was proper and made independent of speech, and my time just ended. So thank you very much. Thank you for your argument. We will hear from you in rebuttal. Very briefly, Justice Schroeder, you asked what case applied. The one case that they've ignored, that we cited, is the en banc decision from this court called Dahlia. Dahlia, where a police officer witnesses or reports brutalization of citizens by police officers while he's on the job, to his lieutenant while he's on the job, to I.A. while he's on the job, during his work hours. And this court, an en banc panel of this court, said that's an issue of fact as to whether that was his job duty. Why does that not apply here? That's an issue of fact because my client was commenting about police abuse. Because if she had waited until after the melee had ended and gone to the principal superintendent, whoever the higher-up person is, and said exactly what she did, after it had ended, while she's still in uniform, while she's on duty, I would agree with you. Dahlia would help. But the problem is that she was in the middle of this, of trying to get this situation under control, and at least from the school district standpoint, her speech, far from helping that, it actually, you know, did just the opposite. Well, with all due respect, the facts were quite the opposite. The facts were that the fights had stopped at the time she made the speech. The fights had stopped. That's in the record. That's in the E.R. There were no longer any fights going on. It was the police officer taking down this one student. That, with all due respect, Your Honor, that those are the facts. Oh, I don't think the melee was over. I don't think you can no reasonable jury on this record could say that all calm had been restored and everyone was going about their business. That is definitely not what the record shows here on that. Is that what you're arguing? It does. And that's my argument. That's what the video says, it shows? Yes, that's what the record shows. The fights had stopped. The melee had stopped. Basically, they were they were it was a mop-up operation where the police officers were involved with arresting this one student. If that were true, her suggestion to the crowd to get out your cameras would make no sense. So I just don't think your argument on that point is not credible. But do you understand the distinction I'm drawing? I'm with you that if it had been after the fact, she goes to the principal's office or some higher-up, and even while on duty makes the complaint, but not when you're in the middle of what your job is supposed to be, which is to help the police get under get things under control. I take strong exception with the idea that her job is calling out the police for abuse. I didn't say that. I said her job is to help the police maintain control and but but they're abusing students while they're trying to maintain control. Right. That's not right. I agree. And she pointed out something that was not right. Right. But it's the time. I mean, I think your opponent, unfortunately, is right that it's the time and the place in which she engaged in that speech. I'm not saying that the content of it is totally unprotected in all circumstances. But I'm saying in this circumstance, when she made it, in the capacity she made it, it's she's clearly speaking as a public employee. I would just respectfully request that you go look at the EOR, because it's clear that the fights had dissipated. If you look at the video, the fights had dissipated. There was just a crowd around this student that was being arrested. And that's what the record most favorable to my client said, because that's what she testified to. And that's part of the record. She said fights were dissipated. Are you talking about the student that was thrown to the ground? Yes. So at the time the student was thrown to the ground, people were dispersing. There were no longer any fights. That's what my client testified to. And that's in the record. And that's what the evidence most favorable to her shows, is that the police were basically, that was it. They were affecting an arrest of one student and doing it brutally, which was inappropriate. And so she did not have the authority to call out police when they were involved in a police action on campus. Okay. Thank you very much. The case to disargue will be submitted, and we are in recess for today. Thank you. All rise.
judges: Schroeder, Watford, Illston